# EXHIBIT E

# SALES AND ASSIGNMENT AGREEMENT

THIS SALES AND ASSIGNMENT AGREEMENT (This "**Agreement**") is made and entered into as of August 17, 2023, between **ONSET FINANCIAL, INC.**, a Utah corporation having its principal place of business at 274 West 12300 South, Draper, Utah 84020 (the "**Seller**") and **PLANTERS BANK**, having its principal place of business at 201 Northwest Railroad, Suite 110, Hammond, LA 70401 (the "**Bank**").

RECITALS:

A. Seller and **TRICO PRODUCTS CORPORATION** (the "**Lessee**") have entered into Lease Schedule No. 028 dated August 1, 2023 (the "**Schedule**") which incorporates by reference the terms and conditions of that Master Lease Agreement No. OFI1045321 dated May 9, 2018 (the "**Master Lease**") and that Continuing and Unconditional Guaranty Agreement given by **FIRST BRANDS GROUP, LLC** f.k.a. **TRICO GROUP, LLC** dated May 9, 2018, as amended by Amendment No. 1 dated July 21, 2020, and that Guaranty Agreement given by **FIRST BRANDS GROUP INTERMEDIATE, LLC** dated July 21, 2020 (collectively, the "**Guaranty**") pursuant to which Seller has agreed to purchase and lease to Lessee certain equipment or other goods or property (collectively, the "**Property**") now or hereafter subject to the Schedule, which Property may be generally described in the attached Exhibit A. The Schedule, the Master Lease and any and all documents, agreements, or writings executed or delivered in connection therewith, including any guaranties (in each case only in so far as the Master Lease or such other documents, agreements, or writings relate to the Schedule) which includes the "Transaction Documents", as defined in the Master Lease, are sometimes referred to herein collectively as the "**Lease**", copies or originals of which are attached hereto as Exhibit B.

B. In connection with the Lease, Seller and Lessee have also entered into a Master Progress Payment Agreement dated May 9, 2018 (the "**MPPA**"), a copy of which is attached hereto as Exhibit C. Under the MPPA, Lessee may from time to time designate on one or more Progress Payment Certificates ("**Payment Certificate(s)**") or on a final Acceptance and Delivery Certificate ("**Acceptance and Delivery Certificate**" and, together with the Payment Certificate(s), the "**Certificate(s)**"), certain items of Property which it intends to lease from Seller under the Lease. Upon receipt of a Certificate, Seller may purchase the Property specified on the Certificate and lease such Property to Lessee under the Schedule. Accordingly, Seller will acquire the Property in stages, as directed by Lessee pursuant to one or more Certificates. The Lessee will execute a final Acceptance and Delivery Certificate once all items of Property have been acquired, installed, and accepted by Lessee.

C. Bank desires to purchase from Seller all of Seller's right, title and interest in (but none of its obligations under or with respect to) the Lease and the Property now owned or hereafter purchased pursuant to the Certificates.

D. Seller is willing to sell all its right, title and interest in the Property and assign the Lease to Bank all as set forth herein.

NOW, THEREFORE, the parties agree as follows:

<u>All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Lease and the MPPA.</u>

1. <u>Sale of Property and Assignment of Lease</u>. Subject to the terms and conditions contained herein, Seller hereby sells, assigns and transfers to Bank (without recourse except to the extent otherwise provided herein) and Bank hereby purchases from Seller all of Seller's right, title and interest in (but none

of its obligations under or with respect to) the Property and Lease. The parties acknowledge that Seller may purchase some or all of the Property in installments or stages in connection with the MPPA and as set forth on the Payment Certificate(s). When making such partial payments towards the purchase of Property (i.e., an installment payment, deposit, or any other type of payment that does not result in Seller (or in Lessee in the event the Lease is deemed to be a leased intended as security rather than a true lease) acquiring title to such Property or to any specific item included within the Property), the parties acknowledge that, in such instance, Seller may not have title to the Property or be able to acquire a first priority security interest in the Property unless and until the full purchase price for the Property has been paid to the appropriate party, as designated in the Certificate(s). Upon each partial payment, however, Seller agrees to sell, assign and transfer to Bank without recourse, and Bank agrees to purchase and take assignment from Seller whatever right, title and interest in such Property as Seller may hereafter acquire (but none of its obligations under or with respect thereto) pursuant to one or more Payment Certificate(s) executed by Lessee in connection with the MPPA. For purposes of the foregoing, Bank hereby authorizes Seller to enter into such Payment Certificate(s) in Seller's name. Notwithstanding the foregoing, Seller shall not sign any Payment Certificate(s) or distribute progress payments under the MPPA with respect to the Property subject to the Lease without Bank's prior written consent unless Seller reasonably determines that all conditions precedent to any such disbursement set forth in the Lease have been satisfied in full. Seller's delivery to Bank of completed Certificate(s) shall constitute the sale, assignment and transfer to Bank hereunder of whatever right, title and interest in the Property that Seller has in the Property specified in such Certificate(s). Upon Seller's delivery of each such Certificate(s) to Bank, Bank will reimburse Seller for its purchase of or payment towards (including installment payments, deposits, or partial payments that do not result in the acquisition of title to the Property) the Property in accordance with Section 3.b hereof. Bank hereby grants to Seller a purchase money security interest in any Property sold hereunder until Seller receives payment of the full Purchase Price (defined herein), at which time the security interest shall terminate. NOTWITHSTANDING SUCH GRANT, SELLER SHALL NOT FILE ANY UNIFORM COMMERCIAL CODE FINANCING STATEMENT DESIGNATING BANK AS THE "DEBTOR" WITH RESPECT TO THE TRANSACTION CONTEMPLATED HEREUNDER.

With the purchase of the Property and Lease, as described above, Bank will also receive, without limitation, the right to receive all Designated Rental Payments (as such term is defined below); any and all other claims and rights to monies due and to become due under the Lease (including any and all late fees and other charges, or any amounts due in connection with the damage, destruction, loss, theft or taking of any Property and all proceeds of any of the foregoing and of any insurance maintained under the Lease); any award or payment made with respect to the Property or the Lease in any bankruptcy, reorganization or other court or administrative action; and all rights and remedies under the Lease, including the right to collect Designated Rental Payments, to repossess the Property in the event of a default by Lessee, any guarantor or any other obligor under the Lease (each, an "**Obligor**"), and to take legal proceedings or actions (collectively, the "**Assigned Interest**"). Bank accepts such assignment.

2. Representations and Warranties by Seller. Seller represents and warrants that:

(a) it is (or will be upon the execution of the final Acceptance and Delivery Certificate) the legal owner of or has (or will have upon the execution of the final Acceptance and Delivery Certificate) a first lien and priority security interest in the Property (or in the case of software, has such rights under license agreements as were assigned to Seller by Lessee, to the extent assignable), that the Property is (or will be upon the execution of the final Acceptance and Delivery Certificate) free and clear of all liens, charges, encumbrances and other agreements other than the Lease and any applicable software license, and that Seller may lawfully sell its right, title and interest in the Property to the Bank;

(b) the execution by Seller of this Agreement and the other documents and instruments delivered in connection herewith (collectively, the "**Assignment Documents**") the documents comprising of the

Lease to which it is a party, and its participation in the transaction specified herein and therein is in its ordinary course of business and within the scope of its existing corporate authority;

(c) there is no action, suit or proceeding pending against Seller before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution and delivery by Seller of or performance by Seller under this Agreement, any of the other Assignment Documents or the documents comprising of the Lease to which Seller is a party;

(d) no approval of, or consent from, any third party or any governmental authority is required for the execution and delivery by Seller of or performance by Seller under this Agreement, any of the other Assignment Documents, or any of the documents comprising of the Lease to which Seller is a party;

(e) the execution and delivery by Seller of, and performance by Seller under, this Agreement, the other Assignment Documents, and of the documents comprising of the Lease to which Seller is a party and the transactions contemplated hereby and thereby: (i) do not contravene any provisions of law or of any rule, regulation, permit, order, ruling or injunction applicable to Seller; and (ii) do not conflict and are not inconsistent with, and will not result (with or without the giving of notice or passage of time or both) in the breach of or constitute a default or require any notice or consent under any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other document, instrument, writing or agreement to which Seller is a party, by which Seller may be bound, to which Seller or its property may be subject, or under Seller's organizational documents (except as and to the extent specified on this Agreement);

(f) each of the documents comprising of the Lease: (i) has been duly and validly authorized, executed and delivered by the parties thereto; (ii) is in full force and effect with respect to the parties thereto; and (iii) constitutes the legal, valid and binding obligations of the parties thereto, enforceable against such parties in accordance with their terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance or other similar laws affecting the enforcement of creditors' rights generally, and by applicable laws (including any applicable common law and equity) and judicial decisions which may affect the remedies provided therein;

(g) Seller has not heretofore assigned, pledged or transferred any interest in any part of the Assigned Interest conveyed pursuant to this Agreement or the other Assignment Documents and, on the date of its assignment of the Assigned Interest to Bank, Seller will be the sole lessor under the Lease, and its interest therein will be free and clear of all liens, charges, encumbrances and agreements;

(h) with respect to the Schedule and any other document comprising of a portion of the Lease that is chattel paper, the Lessee executed only one (1) original of such Schedule or other document, the chattel paper portion of which was delivered to Seller by the Lessee and will be delivered to Bank pursuant hereto;

(i) (i) there has been no prepayment of any Rental (as defined in the Lease) or other payments due under the Lease and the number and periodic amount of unpaid Designated Rental Payments under the Lease as shown in this Agreement is correct, and (ii) all remaining Designated Rental Payments are due in accordance with the terms of such Lease;

(j) the Lease constitutes the entire agreement of the parties thereto with respect to the transaction evidenced thereby;

(k) no "default" or "event of default" (as such terms are or may be defined in the Lease) or, to Seller's knowledge, no event which, with the giving of notice or lapse of time or both, would become a default or an event of default, has occurred under the Lease;

(l) to Seller's knowledge upon execution of a final Acceptance and Delivery Certificate: (i) the Property has been delivered to, and unconditionally accepted by, the Lessee; and (ii) no event has occurred which constitutes a casualty with respect to the Property;

(m) Seller is not insolvent within the meaning of any federal or state laws and the consummation of the transaction contemplated by this Agreement will not cause Seller to become insolvent; and

(n) Seller is acting on its sole behalf and is not acting as a "super broker" or "co-broker" or receiving or sharing compensation for handling any transaction from any third party and the Lease is not being "re-brokered" as that term is generally understood in the industry, unless such fact is disclosed in writing at the time such Lease is submitted to Bank; and

(o) the Lease is not a "split transaction" and Bank is the only party being requested to provide funding with respect to the Property and any other equipment attached to, or used in conjunction with, the Property.

ALL OTHER WARRANTIES WITH RESPECT TO THE PROPERTY NOT EXPRESSLY PROVIDED FOR HEREIN, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY EXCLUDED.

3. Consideration. In consideration of the sale of the Property and assignment of the Lease and all other portions of the Assigned Interest as provided herein, inclusive of thirty-six (36) Monthly Rental Payments during the Base Period commencing with the Monthly Rental Payment due on October 1, 2023 through and including the Monthly Rental Payment due on September 1, 2026, each in the amount of $117,000.00, the "**Designated Rental Payments**"), Bank shall pay to Seller the purchase price of $3,631,226.99 (the "**Purchase Price**").

If the Designated Rental Payments include any renewal payments due after the end of the Base Period ("Renewal Designated Payments"), Seller and Bank agree that: (x) the presence of Renewal Designated Payments will not be deemed any indication, agreement, or representation regarding the end of Base Period obligations of the Lessee under the Lease or any potential purchase of the Property by the Lessee under the Lease at the end of the Base Period; but that (y) if the Lease is not renewed in a manner resulting in Lessee's obligation to make such Renewal Designated Payments, proceeds of the sale of the Property or a replacement lease shall first be paid to Bank up to the amount of the Renewal Designated Payments. The parties acknowledge that the Lease is subject to the MPPA and the Certificates which permit the Lessee to adjust the quantity and cost of Property which Seller will purchase and lease to Lessee under the Lease, and that any adjustment in the quantity and cost of the Property will require a revision to the amount of the Designated Rental Payments (the "**Revised Designated Rental Payments**"). The parties agree that a revision to the amount of the Designated Rental Payments will necessarily require a revision in the Purchase Price. Accordingly, Seller and Bank agree that upon the occurrence of a revision in the Designated Rental Payments, the Purchase Price will be revised ("**Revised Purchase Price**") to maintain the "yield" to Bank in the transaction based upon the assumptions contained in that certain proposal letter ("**Proposal Letter**") dated July 18, 2023, between Seller and Bank attached as Exhibit D. Upon determination of the Revised Designated Rental Payments and the Revised Purchase Price, the parties agree to amend this Agreement to specify such amounts. Subject to the foregoing, the Purchase Price or Revised Purchase Price (as the case may be) shall be paid as follows:

(a) $537,880.00 in cash within three (3) business days after Bank's receipt of this Agreement duly executed by Seller and copies of any Certificate(s) listed on the attached Exhibit E.

(b) Upon Seller's delivery to Bank of each subsequent Certificate not listed on Exhibit E, Bank shall pay to Seller the same amount as Seller paid to purchase the Property as specified in such Certificate. Said payment shall be made within three (3) business days after Bank's receipt of the Certificate.

(c) On or about the Date of Acceptance, Bank shall pay to Seller the balance of the Purchase Price or Revised Purchase Price (as the case may be) not yet paid to Seller under paragraphs a. and b. of this Section 3.

Upon Bank's payment of the Purchase Price or Revised Purchase Price in full, all of Seller's right, title and interest in the Property and the Lease, to the extent not already transferred, shall transfer to Bank.

Upon Bank's receipt of all Designated Rental Payments (or Revised Designated Rental Payments, as the case may be), all of Banks right, title and interest in the Property, the Lease and all other remaining portions of the Assigned Interest shall automatically transfer to Seller for no additional consideration, free and clear of all liens, claims and encumbrances arising through or created by Bank, whereupon Bank shall assign to Seller all financing statements associated with the Lease and related Property and shall deliver to Seller a bill of sale and buyback agreement for the Lease and related Property, which bill of sale shall be "AS IS", "WHERE IS", and without any representation or warranty other than a representation that the Property, the Lease and all other portions of the Assigned Interest are free and clear of all liens, claims and encumbrances arising through or created by Bank.

The parties agree that, as between Seller and Bank, Seller shall be deemed the owner of the Property for federal income tax purposes, and that Seller shall take all the depreciation deductions and have all other tax benefits of ownership with respect to the Property from and after the date of this Agreement. Notwithstanding the foregoing, Bank makes no representations or warranties of any kind whatsoever as to whether or not Seller is entitled to take such deductions or to any other such tax benefits.

4. Early Purchase Fee. Bank has agreed to purchase the Property sold hereunder on a non-recourse basis in advance of the Date of Acceptance and to thus bear the risk of loss if Lessee defaults either prior to or after the commencement of the Lease. As additional consideration to Bank for such earlier purchase, Seller shall pay a fee to Bank each month prior to the Commencement Date. The fee for each month shall be an amount equal to the average daily balance for the month of each progress payments reimbursed to Seller by the Bank, multiplied by 10.50% and divided by 12, and multiplied by the number of days from the progress payment reimbursement date to the first day of the following month. Seller shall pay such fee within five (5) business days of the last day of the month for which the fee is computed. To secure the payment of the fees, Seller grants to Bank a security interest in all of it right, title and interest in and to the MPPA and the Lease, including without limitation, all payments due thereunder and all proceeds received therefrom. Upon Bank's receipt of all fees due it under this section, such security interest shall terminate.

5. Rights to Progress Payment Charges and Rental Payments Prior to the Commencement Date. Seller shall retain all right, title and interest in and to the MPPA, including without limitation, all Progress Payment Charges and other payments due thereunder. Further, notwithstanding Seller's assignment of the Lease to Bank under this Agreement, Seller shall retain all rights to any Interim Rent payments due under the Lease prior to the Commencement Date. Seller's rights hereunder shall include the right to bill for, collect and retain for itself all payments specified in this section.

6. Unilateral Repurchase Rights. At any time prior to full payment of the Designated Rental Payments, Seller shall have the exclusive and unilateral right to repurchase such Lease, related Property and the remaining portion of the Assigned Interest by giving notice of intent to repurchase, which notice shall be given at any time before full payment of the Designated Rental Payments. The purchase price shall be an amount equal to the Bank's then current book value for the Lease, together with any outstanding costs, expenses and fees (including any late fees and attorney's fees), plus any applicable sales, use or transfer taxes, whether any of the foregoing are due and owing from Seller or the Lessee (all such amounts collectively referred to as the "**Repurchase Amount**"). Bank shall have the unrestricted right to sell, transfer, or pledge the Lease and related Property, but any such sale, transfer or pledge shall remain subject to Seller's exclusive and unilateral right to repurchase as set forth above. Upon receipt of any Repurchase Amount from Seller (if any Repurchase Amount is due), Bank shall assign to Seller the Lease together with all financing statements and other associated documents and related Property and shall deliver to Seller a bill of sale (in the form of the attached Exhibit C) for the Lease and related Property.

7. Management of the Lease. During the term of the Lease, Bank hereby designates Seller as Bank's agent to perform or cause to be performed any of Bank's obligations as successor lessor under the Lease, including without limitation, billing and collection of Rental payments and applicable sales/use tax and property tax thereon, filing all sales/use and property tax returns and remitting the tax due thereon to the applicable taxing authorities, and filing amendments to UCC filings to help better identify the Property in the collateral description, when needed. Seller accepts such appointment and agrees to perform Bank's lessor obligations under the Lease at the rate of $10.00 per month through the end of the Lease. This will be billed annually. Provided that Bank has received all Designated Rental Payments as they are paid to and collected by the Seller, Bank agrees not to exercise any of its rights against the Assigned Interests and instead will allow Seller to perform all lessor obligations under the Lease as provided herein. Upon the occurrence of an Event of Default under the Lease, Seller, at Bank's expense, shall take such action as Bank shall reasonably direct to enforce all available rights and remedies under the Lease.

8. Representations by Bank. Bank represents and warrants that:

(a) the execution by Bank of this Agreement and the other Assignment Documents to which it is a party, and its participation in the transaction specified herein and therein is in its ordinary course of business and within the scope of its existing corporate authority;

(b) there is no action, suit or proceeding pending against Bank before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution and delivery by Bank of or performance by Bank under this Agreement or any of the other Assignment Documents to which Bank is a party;

(c) no approval of, or consent from, any third party or any governmental authority is required for the execution and delivery by Bank of or performance by Bank under this Agreement or any of the other Assignment Documents to which Bank is a party;

(d) the execution and delivery by Bank of, and performance by Bank under, this Agreement and the other Assignment Documents to which Bank is a party and the transactions contemplated hereby and thereby: (i) do not contravene any provisions of law or of any rule, regulation, permit, order, ruling or injunction applicable to Bank; and (ii) do not conflict and are not inconsistent with, and will not result (with or without the giving of notice or passage of time or both) in the breach of or constitute a default or require any notice or consent under any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other document, instrument, writing or agreement to which Bank is a party, by which Bank may be bound, to which Seller or its property may be subject, or under Seller's organizational documents (except as and to the extent specified on this Agreement);

(e) each of this Agreement and the other Assignment Documents to which Bank is a party: (i) has been duly and validly authorized, executed and delivered by Bank; (ii) is in full force and effect with respect to Bank; and (iii) constitutes the legal, valid and binding obligations of Bank, enforceable against Bank in accordance with their terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally, and by applicable laws (including any applicable common law and equity) and judicial decisions which may affect the remedies provided therein;

9. Mutual Indemnity. Each party hereto agrees to indemnify and hold the other party harmless from and against all losses, claims, damages, injuries or expenses (including court costs and reasonable attorneys' fees), howsoever arising, which are incurred by reason of the indemnifying party's breach of any of its obligations, representations, or warranties as set forth herein or in any of the documents executed in connection herewith.

10. Default. In the event either party should breach this Agreement, the non-defaulting party shall be entitled to all of its rights and remedies hereunder, as well as any rights and remedies it may have at law and in equity. In addition, the non-defaulting party shall be entitled to reimbursement from the defaulting party for its costs of enforcement, including without limitation, court costs and reasonable attorneys' fees. The failure of the non-defaulting party on the occasion of any default to exercise any right or remedy available to it shall not constitute a waiver of such right or remedy.

11. Incorporation of Exhibits. All exhibits referred to in this Agreement are incorporated herein by reference and made a part hereof as though set out in full herein.

12. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Utah.

13. Entire Agreement. This Agreement, together with the Lease, the MPPA and the Certificates, constitute the entire agreement between the parties concerning the subject matter hereof. All other prior agreements or understandings of the parties, whether written or verbal, with respect to the subject matter hereof, are hereby superseded.

14. Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

15. Further Action. The parties agree to execute and deliver such additional documents and to take such other and further action as may be required to fully carry out the transactions contemplated herein.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement on the day and year first above written.

| SELLER: | BANK: |
|---|---|
| **ONSET FINANCIAL, INC.** | **PLANTERS BANK** |
| BY: [signature] Lindsay Fellmeth | BY: [signature] Dev Patel |
| TITLE: Vice President | TITLE: SVP |

**AMENDMENT NO. 1**
**TO**
**SALES AND ASSIGNMENT AGREEMENT**

Reference is made to that Sales and Assignment Agreement dated August 17, 2023, as amended by Amendment No. 1 dated December 27, 2024, (collectively, the "Agreement"), by and between **ONSET FINANCIAL, INC.** as "Seller" and **PLANTERS BANK** as "Bank".

Further reference is made to Lease Schedule No. 028 dated August 1, 2023, as amended by Amendment No. 1 dated December 4, 2024, (collectively, the "Schedule"), to Master Lease Agreement No. OFI1045321 dated May 9, 2018 (the "Master Lease") and to Master Progress Payment Agreement dated May 9, 2018 (the "MPPA"), each by and between **ONSET FINANCIAL, INC.** (the "Lessor") and **TRICO PRODUCTS CORPORATION** (the "Lessee) (collectively, the "Lease").

Pursuant to the Agreement, Seller assigned the Lease and sold the underlying property (the "Property") to Bank.

All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Agreement, the Lease, and the Master Progress Payment Agreement.

Pursuant to Section 3 of the Agreement, Seller and Bank have agreed to amend the Agreement to reflect the final Revised Purchase Price and the final Revised Designated Rental Payments effective the date hereof of the Date of Acceptance under the Lease, which is December 4, 2024. Therefore, Section 3 of the Agreement shall be amended effective the date hereof, as follows:

Line 1 shall be amended to read, "In consideration of the sale of the Property and assignment of the Lease and all other portions of the Assigned Interest as provided herein, inclusive of thirty-five (35) Monthly Rental Payments during the Base Period commencing with the Monthly Rental Payment due February 1, 2025 through and including the Monthly Rental Payment due on December 1, 2027, each in the amount of $116,935.86, (collectively the "Revised Designated Rental Payments"), Bank shall pay to Seller the purchase price of $3,507,255.79 (the "Revised Purchase Price")."

All other terms and conditions of the Agreement shall remain in full force and effect without change.

Dated: December 27, 2024

| SELLER: | BANK: |
|---|---|
| **ONSET FINANCIAL, INC.** | **PLANTERS BANK** |
| BY: [signature] | BY: [signature] |
| Lindsay Fellmeth | |
| TITLE: Vice President | TITLE: SVP, Lending |



\\UTSJ-VS-WFS01.OSFI.Local\Lease Operations\Master Library\Underwriters\Planters Bank\Amendment to S&A.docx

Compound Period ......... : Monthly

Nominal Annual Rate .... : 10.500 %

CASH FLOW DATA

| | Event | Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 12/27/2024 | 3,507,255.79 | 1 | | |
| 2 | Payment | 02/01/2025 | 116,935.86 | 35 | Monthly | 12/01/2027 |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 12/27/2024 | | | | 3,507,255.79 |
| 2024 Totals | | 0.00 | 0.00 | 0.00 | |
| 1 | 02/01/2025 | 116,935.86 | 35,777.31 | 81,158.55 | 3,426,097.24 |
| 2 | 03/01/2025 | 116,935.86 | 29,978.35 | 86,957.51 | 3,339,139.73 |
| 3 | 04/01/2025 | 116,935.86 | 29,217.47 | 87,718.39 | 3,251,421.34 |
| 4 | 05/01/2025 | 116,935.86 | 28,449.94 | 88,485.92 | 3,162,935.42 |
| 5 | 06/01/2025 | 116,935.86 | 27,675.68 | 89,260.18 | 3,073,675.24 |
| 6 | 07/01/2025 | 116,935.86 | 26,894.66 | 90,041.20 | 2,983,634.04 |
| 7 | 08/01/2025 | 116,935.86 | 26,106.80 | 90,829.06 | 2,892,804.98 |
| 8 | 09/01/2025 | 116,935.86 | 25,312.04 | 91,623.82 | 2,801,181.16 |
| 9 | 10/01/2025 | 116,935.86 | 24,510.34 | 92,425.52 | 2,708,755.64 |
| 10 | 11/01/2025 | 116,935.86 | 23,701.61 | 93,234.25 | 2,615,521.39 |
| 11 | 12/01/2025 | 116,935.86 | 22,885.81 | 94,050.05 | 2,521,471.34 |
| 2025 Totals | | 1,286,294.46 | 300,510.01 | 985,784.45 | |
| 12 | 01/01/2026 | 116,935.86 | 22,062.87 | 94,872.99 | 2,426,598.35 |
| 13 | 02/01/2026 | 116,935.86 | 21,232.74 | 95,703.12 | 2,330,895.23 |
| 14 | 03/01/2026 | 116,935.86 | 20,395.33 | 96,540.53 | 2,234,354.70 |
| 15 | 04/01/2026 | 116,935.86 | 19,550.60 | 97,385.26 | 2,136,969.44 |
| 16 | 05/01/2026 | 116,935.86 | 18,698.48 | 98,237.38 | 2,038,732.06 |
| 17 | 06/01/2026 | 116,935.86 | 17,838.91 | 99,096.95 | 1,939,635.11 |
| 18 | 07/01/2026 | 116,935.86 | 16,971.81 | 99,964.05 | 1,839,671.06 |
| 19 | 08/01/2026 | 116,935.86 | 16,097.12 | 100,838.74 | 1,738,832.32 |
| 20 | 09/01/2026 | 116,935.86 | 15,214.78 | 101,721.08 | 1,637,111.24 |
| 21 | 10/01/2026 | 116,935.86 | 14,324.72 | 102,611.14 | 1,534,500.10 |
| 22 | 11/01/2026 | 116,935.86 | 13,426.88 | 103,508.98 | 1,430,991.12 |

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 23 | 12/01/2026 | 116,935.86 | 12,521.17 | 104,414.69 | 1,326,576.43 |
| 2026 Totals | | 1,403,230.32 | 208,335.41 | 1,194,894.91 | |
| 24 | 01/01/2027 | 116,935.86 | 11,607.54 | 105,328.32 | 1,221,248.11 |
| 25 | 02/01/2027 | 116,935.86 | 10,685.92 | 106,249.94 | 1,114,998.17 |
| 26 | 03/01/2027 | 116,935.86 | 9,756.23 | 107,179.63 | 1,007,818.54 |
| 27 | 04/01/2027 | 116,935.86 | 8,818.41 | 108,117.45 | 899,701.09 |
| 28 | 05/01/2027 | 116,935.86 | 7,872.38 | 109,063.48 | 790,637.61 |
| 29 | 06/01/2027 | 116,935.86 | 6,918.08 | 110,017.78 | 680,619.83 |
| 30 | 07/01/2027 | 116,935.86 | 5,955.42 | 110,980.44 | 569,639.39 |
| 31 | 08/01/2027 | 116,935.86 | 4,984.34 | 111,951.52 | 457,687.87 |
| 32 | 09/01/2027 | 116,935.86 | 4,004.77 | 112,931.09 | 344,756.78 |
| 33 | 10/01/2027 | 116,935.86 | 3,016.62 | 113,919.24 | 230,837.54 |
| 34 | 11/01/2027 | 116,935.86 | 2,019.83 | 114,916.03 | 115,921.51 |
| 35 | 12/01/2027 | 116,935.86 | 1,014.35 | 115,921.51 | 0.00 |
| 2027 Totals | | 1,403,230.32 | 76,653.89 | 1,326,576.43 | |
| Grand Totals | | 4,092,755.10 | 585,499.31 | 3,507,255.79 | |

Last interest amount increased by 0.04 due to rounding.

# ASSIGNMENT

**ONSET FINANCIAL, INC.** ("Lessor") hereby assigns, conveys, transfers and sets over unto **PLANTERS BANK** ("Assignee"), all of its right, title and interest in and to the Authorization for Electronic Funds Transfer (attached as Exhibit A), as it relates only to those lease payments specified in that Notice of Assignment (attached as Exhibit B) relating to Master Lease Agreement No. OFI1045321 dated May 9, 2018 and Lease Schedule No. 028 dated August 1, 2023, including any amendments thereto, by and between Lessor and **TRICO PRODUCTS CORPORATION** (the "Lessee") (collectively, the "Lease") wherein Lessor has assigned the Lease and sold the underlying Property to Assignee.

Dated: December 27, 2024

**ONSET FINANCIAL, INC.**

**BY:** ______________________
Lindsay Fellmeth
**TITLE:** Vice President

# AUTHORIZATION FOR ELECTRONIC FUNDS TRANSFER

**TRICO PRODUCTS CORPORATION** (the "Lessee")
**ONSET FINANCIAL, INC.** (the "Lessor") - ACH ID No. 9584120001

Master Lease Agreement No. OFI1045321 (the "Master Lease") and any and all Lease Schedules thereto (collectively, the "Lease").

Bank of America, N.A.
Name of Financial Institution

[redacted]
ABA/Routing No.

Address of Financial Institution

City, State Zip Code

Type of Account ✓ Checking ____ Savings

Trico Products Corporation
Name on Account

[redacted]
Account Number

Tax ID#: 16-0665680

The undersigned, a duly authorized and acting representative of the Lessee, hereby authorizes Lessor or its assigns to make electronic debit entries from the above account at the above named financial institution for all rental payments and other sums required to fulfill Lessee's contractual obligation under the referenced Master Lease and Schedule. A copy of this form will be kept on file and made available to all interested parties. Lessor agrees to notify Lessee upon its discovery of any errors resulting from transactions under this authorization. Lessee agrees to notify Lessor and its assigns, immediately of any changes that may affect these instructions or Lessor's ability to rely upon them.

Unless otherwise provided for in the Lease, this authorization may be cancelled upon written notification in such a manner as to afford Lessor and its assigns and the above-named bank a reasonable opportunity to act on it. Any such cancellation shall be effective only with respect to entries initiated after notification to Lessor and its assigns.

Payment under this authorization will be made using the automated clearing house ("ACH") funds transfer system and will be made in accordance with the authorization, the ACH Rules and other applicable law in effect from time to time.

In authorizing the above agreement, Lessee indemnifies Lessor and its assigns of any and all loss, cost, damage or expenses incurred by Lessee in connection with errors in deposits, credit or debit entry errors caused by persons who are not employees of Lessor and/or its assigns.

EFFECTIVE DATE: April 23, 2019

LESSEE: TRICO PRODUCTS CORPORATION

BY: [signature]
Stephen Graham

TITLE: CFO, Treasurer & Secretary

DATE: April 23, 2019

**PLEASE SUBMIT A VOIDED CHECK OR DEPOSIT SLIP FROM YOUR ACCOUNT WITH THIS AGREEMENT**